UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                           Case Number 18-20183

v.                                         Honorable David M. Lawson

ANDRE LAMAR, JR.,

        Defendant.
_____/

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Andre Lamar has filed a motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Lamar has served approximately 18 months of a 48-month prison sentence for distributing controlled substances. He argues that a sentence reduction is justified by his medical conditions coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government concedes that Lamar has shown extraordinary and compelling reasons for release, but it maintains that he would be a threat to public safety if released. Although Lamar's obesity coupled with the threat of a COVID-19 infection may amount to "extraordinary and compelling reasons to warrant such a reduction," as section 3582(c)(1)(A)(i) requires, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release. Because Lamar has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Defendant Andre Lamar pleaded guilty to one count of conspiracy to distribute cocaine and oxycodone, 21 U.S.C. § 846. On March 4, 2019, he was sentenced to 48 months in prison to

be followed by three years of supervised release. Lamar began serving his sentence on October 9, 2019, but he received credit for the time he served after the Court revoked his bond for violating bond conditions by testing positive for opiates. He currently is confined at FCI Morgantown, a minimum-security prison in West Virginia that houses around 446 inmates. Lamar presently has served approximately 18 months or around 38% of his custodial sentence. Public records of the BOP indicate that the defendant is scheduled to be released from prison on October 4, 2022. Lamar is 25 years old.

On June 5, 2020, Lamar submitted an administrative request for compassionate release, which the Warden at FCI Morgantown denied on June 15, 2020. On September 1, 2020, Lamar filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The Court appointed counsel, who filed a supplemental brief on September 29, 2020.

On December 4, 2020, Lamar filed a supplemental notice informing the Court about a recent coronavirus outbreak at FCI Morgantown. The most recent data disclosed by the BOP indicates that there are 120 active coronavirus cases among inmates and nine among staff at the Morgantown facility. In addition, five other inmates and six staff members previously were diagnosed and now have recovered. FCI Morgantown has not reported any deaths among inmates or staff. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of

the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Lamar relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP.

*United States v. Jones*, No. 20-3701, --- F.3d ---, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

A.

Addressing the first element — extraordinary and compelling reasons — Lamar argues that his race (African American), gender, status as a former smoker, and pre-existing medical conditions consisting of morbid obesity and hypertension render him vulnerable to complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *Id.* at *2 n.6.

The government concedes that the request for release has been administratively exhausted and that the defendant's obesity qualifies as a recognized serious medical risk factor. Nevertheless, the government argues that, even if the defendant does medically qualify for release, he should not be released because of the seriousness of his crime — involving the distribution of large quantities of cocaine and pills through a drug trafficking organization.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular

disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).

The government concedes that Lamar is morbidly obese. Lamar stands at about 5'9" and his weight has ranged from 375 (most recently) to 450 pounds in April 2019, meaning that his body mass index (BMI) ranged from 55 to 66 throughout his incarceration. The CDC's guidelines advise that individuals who are severely obese (BMI of 40 or greater) are among those with the "strongest and most consistent evidence" of severe illness from COVID-19. *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, Ctrs. for Disease Control and Prevention (Oct 6, 2020), https://bit.ly/34aDRY6.

The government disagrees that Lamar's other purported conditions — including his race and gender are sufficient to establish extraordinary and compelling circumstances justifying early release. The connection between the alleged conditions and serve illness from COVID-19 is less clear.

First, the defendant's race and gender do not amount to an extraordinary and compelling reason for his compassionate release. "Unfortunately, it is true that the rates of death and hospitalization from COVID-19 among African Americans is much higher than that among the general population." *United States v. Harris*, 2020 WL 4788027, at * 3 (E.D. Mich. Aug. 18, 2020) (citing Tiffany Ford, Sarah Reber, and Richard V. Reeves, *Race Gaps in COVID-19 Deaths Are Even Bigger Than They Appear*, Brookings, June 16, 2020, https://www.brookings.edu/blog/up-front/2020/06/16/race-gaps-in-covid-19-deaths-are-even-bigger-than-they-appear). "However, so far as is currently understood, that difference most probably owes to '[l]ong-standing systemic health and social inequities.'" *Ibid.* (citing Ctrs. for Disease Control and Prevention, COVID-19 in Racial and Ethnic Minority Grps., July 24, 2020 https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnicminorities.

html).  The CDC does not consider age or race to be factors that definitively increase one's risk of severe complications from COVID-19 related illness.

Second, it is unclear how much of a role the defendant's hypertension may play.  The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19."  *People with Certain Medical Conditions*, *supra* (emphasis added). "Drilling down, though, that condition is grouped with 'serious heart conditions' that predispose a person to higher risks of complications.  Also included are 'heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension.'" *United States v. Watkins*, 2020 WL 5035111, at *4 (E.D. Mich. Aug. 11, 2020) (Lawson, J) (quoting *People with Certain Medical Conditions*, *supra*).  Although the defendant has been diagnosed with hypertension, he does not appear to suffer from pulmonary hypertension or any other types of heart disease.

Third, the same is true for the defendant's former status as a smoker.  The CDC advises that people who smoke or have a history of smoking "are at an increased risk of severe illness" from COVID-19.  *People with Certain Medical Conditions*, *supra*.  Although Lamar's medical records reflect that he used to smoke, no details are provided about his smoking history, nor, according to the government, is he currently allowed to smoke inside FCI Morgantown.

Nevertheless, in light of medical evidence that morbid obesity poses a heightened risk for severe complications from COVID-19, the government agrees that Lamar has satisfied the first eligibility threshold for compassionate release during the pandemic.

B.

Although the defendant has made a satisfactory showing of extraordinary and compelling medical risk, early release is not justified in this case because the relevant 3553(a) factors weigh decidedly against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones*, 2020 WL 6817488 at *7 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Lamar's crime is serious. He played a key leadership role in a significant drug trafficking conspiracy, coordinating the distribution of 100-400 kilograms of controlled substances, which included cocaine and opiates. He possessed firearms throughout the conspiracy and maintained multiple premises to evade police.

The Court determined at the time of sentencing that the 48-month prison sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a), and one of those goals — protection of the public — was paramount in this case. The defendant's prison

conduct validates that concern. He has been disciplined five times in the last 18 months, most recently less than a month ago.

The BOP designated the defendant a medium recidivism risk. Lamar has the following disciplinary record:

- April 2019: refusing to obey order (Lamar claims he was unable to make it to his cell before the doors closed due to his physical limitations);

- February 2020: possessing a hazardous tool (two cellphones) (Lamar claims that one did not work, and that he got the phones to see his newborn son by video call);

- May 2020: possessing razors in his cell (Lamar claims that he forgot to return a BOP-provided shaving razor);

- September 2020: failing to follow safety regulations and refusing to obey an order (Lamar claims he felt winded and needed water after working out, so we went to retrieve his water bottle. But he received a citation for not wearing a mask that was in his hand).

He also has a pending disciplinary action from October 8, 2020, for being insolent to staff members. Lamar contends this was a misunderstanding; he maintains that, while standing in the hallway, a fellow inmate showed him a magazine with a picture of a woman, the physique of whom Lamar crudely complimented. An officer asked what he said, he repeated it, and the inquiring officer thought Lamar was talking about a female officer, which Lamar denies.

Although Lamar offers explanations for his checkered disciplinary record, it does not alter the historical fact that the Court plainly imposed a sentence that was not greater than necessary to achieve congressional goals. Reducing that sentence by nearly two-thirds of the original custodial term certainly would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary, it severely would undermine the goals of both specific and general deterrence, which is of particular

concern with a defendant who has demonstrated his enterprising resourcefulness in flouting the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief, even in light of the massive outbreak of COVID-19 at FCI Morgantown. The defendant is a young man, and aside from his obesity is in relatively good health. His obesity puts him at risk, to be sure. But his conduct both leading to his indictment and afterward in prison cast grave doubt on his inclination to be law abiding and conform to the norms of society. On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served only small portions of their sentences. *E.g.*, *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020) ("Given the gravity of Benge's drug offense and that he has only served a fraction of his 240-month sentence, release is not appropriate. Further, Benge's drug trafficking offense suggests that he poses a continued danger to the safety of the community.").

### III.

Lamar has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 198) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: December 10, 2020